UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN NEMEROFSKY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-CV-10045-GAO |
| | ) |
| XENTRY SYSTEMS INTEGRATION, LLC and | ) |
| MATRIX SYSTEMS HOLDINGS, LLC, | ) |
| | ) |
| Defendants. | ) |

**ANSWER AND COUNTERCLAIM OF DEFENDANTS XENTRY SYSTEMS INTEGRATION, LLC AND MATRIX SYSTEMS HOLDINGS, LLC**

Defendants Xentry Systems Integration, LLC ("Xentry") and Matrix Systems Holdings, LLC ("Matrix") (collectively, "Defendants"), by and through their undersigned counsel, hereby file their Answer and Affirmative Defenses ("Answer") to the Second Amended Complaint ("Complaint") of Plaintiff John Nemerofsky ("Plaintiff"). Xentry also files a Counterclaim against Plaintiff, as set forth in Counts I through III, alleging the following: Conversion (Count I), Breach of Fiduciary Duty (Count II) and Unjust Enrichment (Count III), each detailed infra.

In responding to the Complaint, Defendants incorporate the headings and numbered paragraphs set forth in the Complaint for the Court's convenience, and hereby respond as follows:

**DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT**

**PARTIES**

1.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations regarding Plaintiff's residence contained in Paragraph 1.

2.  Defendants admit that Xentry is an Ohio corporation with a regular place of business at 771 Dearborn Park Lane, Suite N, Columbus, Ohio 43085. Defendants further admit

1

that Xentry's registered agent in Massachusetts is CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110. Defendants deny the remaining allegations contained in Paragraph 2.

3. Defendants admit that Matrix is an Ohio Corporation with a regular place of business at 1041 Byers Road, Miamisburg, Ohio 45342. Defendants further admit that Matrix's registered agent in Ohio is CH&K Agent Service, Inc., 1 South Main Street – Suite 1300, Dayton, Ohio 45402. Defendants deny the remaining allegations contained in Paragraph 3.

## JURISDICTION

4. Denied.

5. Defendants admit that this Court has jurisdiction to adjudicate the claims alleged in the Complaint pursuant to 28 U.S.C. § 1332.

## FACTS

6. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 5 as if fully stated and set forth in this Paragraph.

7. Defendants admit that Plaintiff was offered employment at Xentry on or about June of 2014, but deny that Plaintiff and Defendants entered into any "employment agreement." Defendants further answer that there is no "Exhibit A" attached to the Complaint.

8. Defendants admit that Plaintiff was President of Xentry, but deny the remaining allegations contained in Paragraph 8.

9. Admitted.

10. Defendants admit the allegations contained in Paragraph 10, but further answer that Plaintiff was also responsible for administration, billing, collections, accounting, acquisition related opening balance sheet accounting, inventory control, distribution and all other duties

inherent in his role as Xentry's President, and in conjunction with his statements to Xentry personnel that he sought to be in charge of all such areas.

11.     Defendants admit that they acquired AcreeDaily ("AD") -- an electronic systems integration company located in Ohio -- but deny that such acquisition took place on or about May 21, 2014.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied. Answering further, Defendants state that Plaintiff failed to fulfill his duties to oversee various reorganizational changes.

21.     Denied.

22.     Denied.

23.     Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 23. Defendants further answer that, to the extent any review was issued in connection with Plaintiff's work performance, such review would have been unreliable and biased as it would have been delivered by Holly Tsourides, Plaintiff's girlfriend.

24.     Denied.

25.     Denied.

26.     Defendants admit the statement in Paragraph 26 that "Significant revenue was forecasted to be received from Frontier R4 upgrades", but deny the remaining allegations contained in Paragraph 26.

27.     Denied.

28.     Defendants deny the allegations contained in the first sentence in Paragraph 28. Defendants admit the allegation in the second sentence that "Client satisfaction was poor", but deny the remaining allegations contained in the second sentence in Paragraph 28. Defendants deny the remaining allegations contained in Paragraph 28.

29.     Denied.

30.     Defendants deny that Plaintiff was confronted with "numerous distractions unrelated to his job function" requiring him to "direct[] significant energy and effort from his primary tasks", including, but not limited to, the items detailed in the lettered subsections of Paragraph 30. With respect to the lettered subsections of Paragraph 30:

30A.    Defendants admit that there existed litigation between David Schellin, Matrix's former COO who was terminated for cause.

30B.    Defendants admit the allegation in Paragraph 30B that the "annual audit for 2015, is still not complete", but deny the remaining allegations contained in Paragraph 30B.

30C.    Defendants admit that there is a lawsuit involving Dan Blend, the former owner of AD and member of Xentry and Matrix, involving, among other items, a claim for an unpaid bonus and a dispute over the opening balance sheet.

30D.    Denied.

31.     Defendants admit the allegation contained in Paragraph 31 that "Tim Welles ("Welles"), board member of Xentry and Matrix, called Plaintiff to inform Plaintiff that Tsourides

4

the CEO of Matrix had resigned," but deny that such discussion was about "Plaintiff remaining employed with the Defendants" and/or "the Defendants['] need[] [for] the Plaintiff to move forward."

32. Defendants deny the allegation contained in Paragraph 32 that Plaintiff spent "three (3) days locked in a conference room with James Young ("Young"), majority owner, John Kennedy ("Kennedy") and Welles." Defendants admit that Young, Kennedy and Welles discussed plans concerning layoffs with Plaintiff, but deny that such discussions were solely about "cash flow."

33. Admitted.

34. Admitted.

35. Admitted.

36. Denied.

37. Defendants deny the allegation in Paragraph 37 that Plaintiff had an employment agreement with Defendants, but admit that Plaintiff "informed Kennedy that he had an employment agreement with" Xentry "that gave him six (6) months of severance" and that "Kennedy stated he was not aware of such agreement."

38. Denied.

## COUNT ONE
## BREACH OF EMPLOYMENT CONTRACT
### (Xentry Systems Integration, LLC)

39. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 38 as if fully stated and set forth in this Paragraph.

40. Denied.

41. Denied.

5

3856978v.1

42. Denied. Answering further, Kennedy offered Plaintiff the possibility of consulting work following his termination.

43. Denied.

## COUNT TWO
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Xentry Systems Integration, LLC)

44. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 43 as if fully stated and set forth in this Paragraph.

45. The allegations contained in Paragraph 45 constitute conclusions of law to which no response is required.

46. Denied.

## COUNT THREE
### WAGE ACT VIOLATION PURSUANT TO MGL C. 149, § 148
### (Xentry Systems Integration, LLC)

47. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 46 as if fully stated and set forth in this Paragraph.

48. The allegations contained in Paragraph 48 constitute conclusions of law to which no response is required.

49. Denied.

50. Denied.

## COUNT FOUR
### UNJUST ENRICHMENT
### (Xentry Systems Integration, LLC)

51. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 50 as if fully stated and set forth in this Paragraph.

52. Denied.

## COUNT FIVE
## MISREPRESENTATION/DETRIMENTAL RELIANCE
### (Xentry Systems Integration, LLC)

53. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 52 as if fully stated and set forth in this Paragraph.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

## COUNT SIX
## BREACH OF EMPLOYMENT CONTRACT
### (Matrix Systems Holdings, LLC)

58. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 57 as if fully stated and set forth in this Paragraph.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

## COUNT SEVEN
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Matrix Systems Holdings, LLC)

63. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 62 as if fully stated and set forth in this Paragraph.

64. The allegations contained in Paragraph 64 constitute conclusions of law to which no response is required.

65. Denied.

## COUNT EIGHT
## WAGE ACT VIOLATION PURSUANT TO MGL C. 149, § 148
## (Matrix Systems Holdings, LLC)

66. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 65 as if fully stated and set forth in this Paragraph.

67. The allegations contained in Paragraph 67 constitute conclusions of law to which no response is required.

68. Denied.

69. Denied.

## COUNT NINE
## UNJUST ENRICHMENT
## (Matrix Systems Holdings, LLC)

70. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 69 as if fully stated and set forth in this Paragraph.

71. Denied.

## COUNT TEN
## MISREPRESENTATION/DETRIMENTAL RELIANCE
## (Matrix Systems Holdings, LLC)

72. Defendants hereby incorporate their responses to the allegations made in Paragraphs 1 through 71 as if fully stated and set forth in this Paragraph.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

## GENERAL DENIAL

Defendants deny each and every allegation of fact, conclusion of law, or other matter contained in the Complaint that has not been expressly admitted herein.

## DEFENDANTS' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed, in whole or in part, to state a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims under M.G.L. c. 149, § 148 are barred because Plaintiff did not work and/or reside in the Commonwealth of Massachusetts during the course of his employment.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims under M.G.L. c. 149, § 148 are barred because Plaintiff failed to exhaust his administrative remedies.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's contract-based claims are barred, in whole or in part, by the statute of frauds.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's contract-based claims are barred, in whole or in part, due to failure of consideration.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's contract-based claims fail, in whole or in part, due to the application of the parol evidence rule.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's contract-based claims fail, in whole or in part, due to Plaintiff's initial breach of the purported contract that he seeks to enforce in this litigation.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or estopped, in whole or in part, due to his unclean hands -- in particular, Plaintiff's breaches of his fiduciary duties and conversion of corporate funds.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, laches, ratification and/or estoppel.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants' conduct was justified by business necessity.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to his failure to make reasonable efforts to mitigate, minimize, or avoid any damages allegedly sustained.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of after-acquired evidence.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims under the common law and statutes of the Commonwealth of Massachusetts are barred by the choice of law doctrine (requiring that Ohio law be applied to this case).

## RESERVATION OF RIGHTS

Defendants reserve the right to amend their answers as Plaintiff's claims are investigated in the course of this litigation. Further, Defendants reserve the right to assert additional affirmative defenses as Plaintiff's claims are clarified in the course of this litigation.

## COUNTERCLAIM OF XENTRY SYSTEMS INTEGRATION, LLC AGAINST JOHN NEMEROFSKY

Counterclaim-Plaintiff Xentry Systems Integration, LLC hereby files this Counterclaim against Counterclaim-Defendant John Nemerofsky, and states the following in support of same:

### PARTIES

1. Counterclaim-Plaintiff Xentry Systems Integration, LLC ("Xentry" or the "Company") is an Ohio corporation with a principal place of business at 771 Dearborn Park Lane, Suite N, Columbus, Ohio.

2. Counterclaim-Defendant John Nemerofsky ("Nemerofsky") is an individual, upon information and belief, residing at 208 Fairmont Street, Lowell, Massachusetts.

### JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 since there is diversity of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. The laws of the State of Ohio govern this case, including the Counterclaim, as Ohio has the most significant relationship to the dispute.

## FACTS

### Nemerofsky's Offer of Employment

5. On June 3, 2014, Holly Tsourides ("Tsourides"), the CEO of Matrix Systems Holdings, LLC ("Matrix"), Xentry's parent corporation, extended an offer letter to Nemerofsky to serve as the Chief Executive Officer ("CEO") and President of Xentry.

6. At the time Tsourides sent Nemerofsky the offer letter, Nemerofsky was living at 38 Todd Ridge Road in Titusville, New Jersey.

7. Since Xentry's office is located in Columbus, Ohio, Xentry required that Nemerofsky move to the Columbus area to be close to the office.

8. Specifically, as part of his offer of employment, Xentry agreed to pay for living arrangements in the greater Columbus, Ohio area for Nemerofsky for the first twelve (12) months of his employment at a monthly rate not to exceed $1,800. Xentry also agreed to directly reimburse Nemerofsky for any reasonable relocation expenses up to $10,000.

9. Nemerofsky accepted Xentry's offer of employment and, in or around October 7, 2014, he signed a one (1) year lease for an apartment in Waterville, Ohio. Rent for this apartment was $1,422 per month. Xentry reimbursed Nemerofsky for that rent, plus the cost of temporary furniture rental.

### Trips to Visit Tsourides in Massachusetts

10. Nemerofsky traveled frequently from Ohio to Lowell, Massachusetts (often over the course of weekends) for the purpose of seeing his girlfriend, Tsourides, without any business justification for those trips.

11. Nemerofsky not only charged Xentry for his flights back and forth from Ohio to Massachusetts to visit his girlfriend, but he also expensed hotel stays, taxi rides, car rental fees and

parking fees. In May and June of 2015 alone, for instance, Nemerofsky expensed a total of seven (7) flights back and forth from Ohio to Massachusetts.

12.     Tsourides and Nemerofsky often spoke about their relationship and scheduling personal trips to visit one another via their company email accounts, proving the lack of business necessity for those trips. In one email in particular from Tsourides to Nemerofsky, dated September 18, 2015, Tsourides told Nemerofsky to "stay in Columbus." She further stated: "You and your irresponsible and mean behavior doesn't deserve to be with me this weekend." Nemerofsky did, however, visit Tsourides that weekend, and charged Xentry for his travel. Less than a month later, on October 8, 2015, Tsourides sent Nemerofsky another email saying: "STAY IN COLUMBUS. YOU ARE MEAN AND DISRESPECTFUL TO ME AND I WON'T STAND FOR IT. HAVE A NICE WEEKEND…". Again, however, Nemerofsky traveled to Massachusetts and charged Xentry for his travel. Finally, in an email from Tsourides to Nemerofsky dated October 14, 2015, Tsourides said: "I saw an opp[ortunity] on the google calendar to grab Nov 2 - 9 in Ohio so I grabbed it. This will put me in Ohio over the weekend so one less back and forth for you!"

13.     Although Nemerofsky was entitled to travel to Massachusetts to visit his girlfriend, he was in no way entitled to charge Xentry for these trips.

14.     By charging Xentry all fees associated with traveling back and forth from Ohio to Massachusetts for non-business related trips to visit his girlfriend, in addition to other Company-paid travel (such as, upon information and belief, trips to visit his children in Florida), Nemerofsky was, in essence, using Xentry as his own personal piggy bank. As CEO and President, Nemerofsky's misuse of tens of thousands of dollars of Xentry's funds was a flagrant violation of his fiduciary duty to Xentry.

13

3856978v.1

### Nemerofsky's Reckless Performance as CEO and President

15. As CEO and President of Xentry, Nemerofsky owed a fiduciary obligation to Xentry in connection with the performance of his duties.

16. Nemerofsky failed to satisfy his fiduciary obligations to Xentry as its CEO and President. Contrary to his laser-like focus on submitting inappropriate travel expenses for reimbursement at a time when he was well aware of Xentry's monetary struggles, Nemerofsky likewise failed miserably to fulfill his job obligations. In fact, due to his poor leadership and reckless actions, Xentry's financial performance, cash flow and client satisfaction plummeted during his tenure as the Company's chief officer.

17. Indeed, numerous Xentry clients complained specifically about Nemerofsky's lack of responsiveness, failure to honor promises and ignorance of their urgent pleas. Among other things, Nemerofsky even failed to respond to requests by customers who *wanted to pay the Company for unbilled services*.

18. On the morning of November 13, 2015, John Kennedy, a member of Matrix's Board of Directors, informed Nemerofsky that November 16, 2015 would be his last day of work. At no point during this meeting was Nemerofsky ever told that his termination was strictly a "head count reduction." To the contrary, given his destructive performance, Nemerofsky's termination was a necessary move for the future of Xentry.

### COUNT I
### CONVERSION

19. Xentry repeats and incorporates the allegations made in Paragraphs 1 through 18 as if fully included herein.

20. Xentry maintained a practice whereby it would reimburse employees, including Nemerofsky, for reasonably incurred business expenses.

21. Nemerofsky intentionally and wrongfully submitted non-business related expenses for reimbursement from Xentry. Among other wrongfully submitted expenses, Nemerofsky sought (and received) reimbursement for tens of thousands of dollars in expenses incurred in non-business related travel back and forth from Ohio to Massachusetts to visit his girlfriend Tsourides.

22. In reliance upon Nemerofsky's claim that such expenses were business-related, Xentry reimbursed him tens of thousands of dollars for the wrongfully claimed expense reimbursements.

23. Xentry can readily identify the amount of money reimbursed to Nemerofsky for his improper expense reimbursement claims.

24. By virtue of Nemerofsky's conduct, Xentry has suffered and continues to suffer irreparable harm, and has incurred and will continue to incur damages.

## COUNT II
## BREACH OF FIDUCIARY DUTY

25. Xentry repeats and incorporates the allegations made in Paragraphs 1 through 24 as if fully included herein.

26. As CEO and President, Nemerofsky occupied a position of trust and confidence with Xentry which imposed upon him duties in the nature of a fiduciary obligation.

27. Nemerofsky's conduct in (i) accepting reimbursement from Xentry for tens of thousands of dollars in non-business related expenses and (ii) failing recklessly to fulfill his job responsibilities, clearly demonstrates that he was not protecting the interests of Xentry, thereby violating his fiduciary duties to Xentry.

28. By virtue of Nemerofsky's conduct, Xentry has suffered and continues to suffer irreparable harm, and has incurred and will continue to incur damages, including, but not limited

to (i) all compensation paid to Nemerofsky and (ii) all monies reimbursed to Nemerofsky for wrongfully submitted expenses.

## COUNT III
## UNJUST ENRICHMENT

29. Xentry repeats and incorporates the allegations made in Paragraphs 1 through 28 as if fully included herein.

30. As detailed above, Nemerofsky knew that Xentry (i) reimbursed him for tens of thousands of dollars of non-business related expenses and (ii) paid him significant compensation, despite his utter failure to perform his job responsibilities.

31. Nemerofsky's acceptance and retention of these monies was under circumstances which render such acceptance and retention inequitable and unfair to Xentry.

32. By virtue of Nemerofsky's conduct, Xentry has suffered and continues to suffer irreparable harm, and has incurred and will continue to incur damages, including, but not limited to (i) all compensation paid to Nemerofsky and (ii) all monies reimbursed to Nemerofsky for wrongfully submitted expenses.

## REQUEST FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff Xentry Systems Integration, LLC hereby prays for the Court to:

1) Enter judgment in favor of Xentry Systems Integration, LLC on all claims in its Counterclaim;

2) Award Xentry Systems Integration, LLC its reasonable attorneys' fees, expenses and costs; and

3) Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Counterclaim-Plaintiff Xentry Systems Integration, LLC hereby demands a trial by jury on its Counterclaim against Counterclaim-Defendant John Nemerofsky.

    Respectfully submitted,

    XENTRY SYSTEMS INTEGRATION, LLC and
    MATRIX SYSTEMS HOLDINGS, LLC

    By their attorneys,

    /s/ David C. Kurtz
    David C. Kurtz (BBO # 641380)
        *dkurtz@constangy.com*
    Monica P. Snyder (BBO # 681573)
        *msnyder@constangy.com*
    CONSTANGY, BROOKS, SMITH & PROPHETE LLP
    535 Boylston Street, Suite 902
    Boston, MA 02116
    Telephone:  617.849.7880
    Fax:  617.849.7870

Dated:  April 15, 2016

## CERTIFICATE OF SERVICE

I, David C. Kurtz, hereby certify that, on this 15th day of April 2016, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record for Plaintiff:

    Matthew C. Donahue, Esquire
    ENO, MARTIN, DONAHUE, LLP
    21 George Street
    Lowell, MA 01852
    m.donahue@enomartindonahuelaw.com

    /s/ David C. Kurtz
    David C. Kurtz

17

3856978v.1